## MERRILL et al. v. OREGON SHORT LINE R. CO.

### No. 1618 (81 Pac. 85).

1. MASTER AND SERVANT—PROMULGATION OF RULES — ENFORCEMENT—DELEGATION OF DUTY.—A master is under a primary and non-delegable duty to use ordinary care not only to promulgate, but also to enforce, reasonable rules and regulations for the safety of his servants, when the nature of the work requires it; and this duty is not performed merely by promulgating the rules, and using ordinary care in selecting men to enforce them.

2. Same—Negligence of Fellow Servant—Concurrence with Master's Negligence.—The fact that the negligence of a fellow servant concurs with the negligence of the master in causing injury to a servant does not exempt the master from liability for his negligence.

3. Same—Fellow Servants—Test of Rule.—The test of whether negligence is that of the master or of a fellow servant is whether the negligent act is a breach of positive duty owing by the master to the servant, and does not depend in any way upon the grade of service of the fellow servant. [1]

4. Appeal—Consideration of Evidence—Directed Verdicts.—An appellate court, in determining whether the lower court should have directed a verdict for appellant, must consider the evidence in the aspect most favorable to respondent.

5. Master and Servant—Failure to Enforce Rules—Negligence—Sufficiency of Evidence.—In an action for the death of a car repairer, caused by kicking a string of cars against the cars between which deceased was working, evidence held, sufficient to authorize a finding that the railroad had not used ordinary care in establishing and enforcing rules and regulations for the safety of its servants.

6. Same—Primary Duties—Nonperformance by Master—Notice—. Where a master delegates the performance of his own primary or positive duty to another, notice to the latter with respect to the nonperformance of such duty is, no matter what his rank, notice to the master.

7. Same—Disregard of Rules—Inference of Master's Knowledge. Knowledge by the master of the servants' failure to observe rules promulgated for their guidance may be inferred from a common disregard for the period of a year of such rules by the servants.

8. Same—Contributory Negligence—Questions for Jury.—Whether a car repairer working between cars in the railroad's yards was guilty of negligence in not displaying a flag, or otherwise observing rules promulgated by the railroad to secure his safety, held, in view of evidence of a general disregard of such rules by the servants for the period of a year, a question for the jury. [2]

9. Same—Assumption of Risk—Statement of Doctrine.—While the servant assumes the usual and ordinary risks incident to his employment, he has the right to assume that the master has used ordinary care to perform his primary and positive duties, and does not assume the risks occasioned by the negligence of the master in failing to perform such duties, unless he has actual or presumptive

---

[1] Pool v. R. R., 20 Utah, 210, 58 Pac. 326.

[2] Pool v. R. R. Co., 20 Utah 210, 58 Pac. 326; Boyle v. R. R., 25 Utah 420, 71 Pac. 988; Wright v. R. R., 14 Utah 383, 26 Pac. 374.

knowledge that such duties have not been performed, and of the risks arising from that fact, and, with such knowledge, accepts or continues in his employment without complaint or protest.[3]

10. SAME—QUESTIONS FOR JURY.—Whether a car repairer working between cars standing in the yards assumed the risk arising from the negligence of the master in failing to see that rules promulgated to secure the safety of servants were observed, *held*, under the evidence, a question for the jury.

(Decided May 15, 1905.)

APPEAL from District Court, Salt Lake County; S. W. Stewart, Judge.

Action by Ellen Merrill, individually and as guardian ad litem of Virgil Merrill and another, against the Oregon Short Line Railroad Company. From a judgment for plaintiffs, defendant appeals.

AFFIRMED.

*P. L. Williams* and *Geo. H. Smith* for appellant.

*Rogers &Street* and *L. W. Lockhart* for respondents.

APPELLANT'S POINTS.

The issues involved in this action are to be determined in accordance with the law of the State of Idaho, where the accident occurred and the transactions took place out of which the case rose, and the trial court very properly so charged the jury. (*Sartin v. O. S. L. R. R. Co.*, 27 Utah 447; *Northern Pac. R. R. Co. v. Babcock*, 154 U. S. 190; *Herrich v. Minn. & St. L. Ry.*, 31 Minn. 11; *Evey v. Mex. Cent. Ry.*, 81 Fed. 303; *Ill. Cent. R. R. v. Ihlenberg*, 75 Fed. 879; *Nor. Pac. v. Mass.* 63 Fed. 114.) And under the law of Idaho, the deceased was a fellow servant with all of the members of the two gangs of car inspec-

---

[3] Wright v. R .R., 14 Utah 392, 46 Pac. 374; Pool v. R. R., 20 Utah 216, 58 Pac. 326.

tors and repairers, including the foremen of those gangs. (*Sartin v. O. S. L.*, 27 Utah 447; *Stephani v. S. Pac. Co.*, 19 Utah 196; *Anderson v. Daly Mining Co.*, 16 Utah 28, 41; *Snyder v. Viola Min. & Smelt. Co.*, 2 Idaho 771, 3 Idaho 282, 26 Pac. 127; *Alaska Min. Co. v. Whelan*, 168 U. S. 86; *Nor. Pac. R. R. Co. v. Peterson*, 162 U. S. 346; *New Eng. R. R. Co. v. Conroy*, 175 U. S. 323; *Martin v. A. T. & S. F. R. R.*, 166 U. S. 399; *Oakes v. Mass.*, 165 U. S. 363; *Nor. Pac. R. R. Co. v. Hambly*, 154 U. S. 349; *Quebec Steamship Co. v. Merchant*, 133 U. S. 375; *Randall v. B. & O. R. R.*, 109 U. S. 478; *Brown v. Cent. Pac.*, 68 Cal. 171; *Fagundes v. Cent. Pac.*, 79 Cal. 97; *Potter v. N. Y. C. & H. R. R. Co.*, 136 N. Y. 77; *Young v. Boston & Me. R. R.*, 46 N. E. 624.)

. We first submit, therefore, that the defendants request of the court to charge the jury to return a verdict for defendant. should have been given and that the plaintiffs were not entitled to recover, because the proof failed to show negligence on the part of defendant company that caused the injury, but disclosed the fact that the only neglect, if any, was in the details of carrying on the work by the deceased and his fellow servants. (*Sartin v. Oregon Short Line R. R. Co.*, 27 Utah 447; *International & C. N. Rd. Co. v. Hall*, 78 Tex. 657, 15 S. W. 108; *Hussey v. Coger*, 112 N. Y. 614; *Michigan Cent. Rd. Co. v. Dolan*, 32 Mich. 510; *Cent. Rd. Co. v. Keegan*, 160 U. S. 259; *Durst v. Carnegie Steel Co.*, 173 Pa. St. 162, 33 Atl. 1102.)

Before recovery could be had, plaintiff must allege and prove negligence in selecting the servant employed to carry out the details of the business. (*Ryan v. Cumberland Valley Rd. Co.*, 23 Pa. St. 384; *Duenfeld v. Boumann*, 58 N. Y. Supp. 110; *Frazee v. Stott*, 120 Mich, 624; 79 N. W. 896; *Snow v. Hosatonic Ry. Co.*, 8 Allen 441, 85 Am. Dec. 720; *McKinnon v. Norcross*, 148 Mass. 533; *Floyd v. Sugden*, 134 Mass. 563; *Potter v. New York Cent. & H. R. Rd.*, 136 N. Y. 77; *Duthie v. Caledonia Rd. Co.*, 24 Sc. Sess. Cas., 4 Series, 934.)

It is sufficient if he provides against such dangers as may

possibly arise and gives the workmen means of protecting themselves. (*Snow v. Hosatonic Ry. Co.*, 8 Allen 441, 85 Am. Dec. 720; *McKinnon v. Norcross*, 148 Mass. 533; *Floyd v. Sugden*, 134 Mass. 563; *Potter v. New York Cent. & H. R. Rd.*, 136 N. Y. 77; *Wright v. So. Pac. Co.*, 80 Fed. 260.)

See further as particularly holding and illustrating the proposition that when the employer has made and promulgated rules and selected reasonably competent servants to conduct the details of the business, including that of observing the rules and seeing that they are observed, he has completely performed his primary duty and is not liable for an accident resulting to one employee by the failure of a co-employee to observe the rules and enforce them. (*D. & R. G. v. Sipes*, 23 Colo. 226, 47 Pac. 287; *Moeller v. D. L. & W. R. Co.*, 43 N. Y. Supp. 605.) This last case is exactly like the one at bar on all the main points. (*Peterson v. Chicago & N. W. Rd. Co.*, 67 Mich. 102, 37 N. W. 260; *Renfro v. C. R. I. & P.*, 86 Mo. 302; *Lundwuist v. Duluth St. Ry. Co.*, 65 Minn. 387, 67 N. W. 1006; *McDonald v. N. Y. Cent. & H. R. Rd. Co.*, 63 Hun 587; *Henry v. Lake Shore, etc., Rd. Co.*, 49 Mich. 495, 13 N. W. 832; *Terre Haute & I. Ry. v. Leeper*, 60 Ill. App. 194.)

The plaintiffs are not entitled to recover because of the negligence of the deceased in failing to make use of the flag in accordance with the rule, of which he had knowledge. There is no contention made in this case nor any proof to sustain such contention, if it were made, that the deceased did not know of the rule or its terms. On the contrary the proof shows absolutely that he had actual knowledge and familiarity with it. His failure to observe it under such circumstances was therefore negligence. The case of *Ala. G. S. Rd. Co. v. Roach*, 110 Ala. 266, 20 South. 132, is precisely like the case at bar upon all main points even to the contention that the rules had been disregarded and therefore waived.

To the same effect, and all being cases of car repairers injured as a result of no flag being displayed in accordance with the requirements of a rule, see the following cases: (*Cent.*

Rd. & Bkg. Co. v. Kitchens, 83 Ga. 83, 9 S. E. 827; Ill. Cent. Rd. Co. v. Winslow, 56 Ill. App. 462; Moeller v. Del. L. & W. R. Co., 66 N. Y. Supp. 882; Renfro v. C. R. I. & P. 86 Mo. 302; Sheridan v. L. I. Rd. Co, 57 N. Y. Supp. 1075; Hulion v. Chicago N. W. Rd., 107 Wis. 122, 82 N. W. 710; Bruen v. Uhlmann, 60 N. Y. Supp. 222; 1 Labatt on Master and Servant, pp. 952 to 957, and notes.)

And finally the defendant is not liable in this case for the further reason that under all the facts the deceased knew the conditions surrounding his work and knew how it was done by himself and his foreman and those working with him, and knew the rules and what they called for. If, therefore, there was any negligence in the way the work was being done by those about him, or in the method and system, he had better information as to that than the defendant. He had actual knowledge of it and the risks and dangers to which he was exposed, and therefore assumed them. (Faulkner v. Mammoth Mining Co., 23 Utah 437; Anderson v. Daly Mining Co., 16 Utah 28; Fritz v. Electric Light Co., 18 Utah 493; Christensen v. R. G. O. W. R. R. Co., 74 Pac. 876; Baker v. Barber Asphalt Pav. Co., 92 Fed. 117; Kansas City S. R. Co. v. Billingslea, 116 Fed. 335; Terry et al. v. Schmidt, 116 Fed. 627; Bunker Hill & S. Mining Co. v. Kettleson, 121 Fed. 529; Southern Pac. Co. v. Seley, 152 U. S. 145; Kohn v. McNulta, 147 U. S. 238; Tuttle v. Detroit, etc., Ry. Co., 122 U. S. 189; Sullivan v. India Mfg. Co., 133 Mass. 396; Gilbert v. Guild, 144 Mass. 601; Ladd v. New Bedford R. R. Co., 119 Mass. 412; s. c., 20 Am. Rep. 331; Lovejoy v. Boston & Me. R. R., 125 Mass. 79; s. c., 23 Am. Rep. 206; Titus v. Bradford, B. & K. R. R. Co., 136 Pa. St. 618, 20 Am. St. Rep. 944; Sweeney v. Berlin & Jones Envelope Co., 101 N. Y. 520; Williams v. D. L. & W. R. R. Co., 116 N. Y. 628; Unfried v. B. & O. R. R. Co., 34 W. Va. 260; 12 S. E. 512; L. S. & M. R. R. Co. v. Knettal, 33 Ohio St. 468; L. & N. R. R. Co. v. Boyant, 22 S. W. 606; Little Rock & M. R. R. Co. v. Barry, 84 Fed. 944; G. C. & S. F. R. R. Co. v. Williams, 39 S. W. 967.)

---

RESPONDENT'S POINTS.

The trial judge properly instructed the jury as follows:

"It is the duty of the master when the nature of the business requires it, to make and promulgate rules for the protection of his servants and to use due care and diligence after the making and promulgating of a necessary rule to have it enforced; and if you should find from the evidence in this case that the nature of the defendant's business was such as, in the exercise of due care and prudence for the safety of its employees, required the making and promulgating of rules, and should further find that the defendant failed to make and promulgate such rules, or having made and promulgated the same, failed to use due care and diligence to have them enforced and should further find that the injuries, if any, received by the deceased, and which resulted in his death, were caused by such failure, you should find for the plaintiffs." This clear and lucid statement of what has now in this State become settled law was not only correct as law, but was most applicable to the issues in the case, and the evidence adduced. (*Pool v. S. P. Co.,* 20 Utah 210; *Boyle v. U. P. R. R. Co.,* 25 Utah 422; *Konold v. R. G. W. Ry. Co.,* 21 Utah 381; *Wright v. S. P. Co.,* 14 Utah 383; *Hough v. Railway Co.,* 100 U. S. 213; *Wabash Ry. Co. v. McDaniels,* 107 U. S. 454; *Abel v. Del., etc., Canal Co.,* 103 N. Y. 581; s. c., 128 N. Y. 662; *Doing v. R. R. Co.,* 151 N. Y. 579; *Whitaker v. Canal Co.,* 126 N. Y. 544; *Strong v. R. R. Co.,* 94 Iowa 380; *White v. R. R. Co.,* 72 Miss. 12; *R. R. Co. v. Triplett,* 54 Ark. 289; *R. R. Co. v. Echols,* 87 Tex. 339; *R. R. Co. v. Hissong,* 97 Ala. 187; *Warn v. R. R. Co.,* 92 Hun 91; 1 Shearman and Redfield on Neg., sec. 202; 1 La Batt, Master and Servant, secs. 214 and 219.)

"When the master has habitually, either expressly or tacitly, sanctioned the violation of the rules, or for any reason suspended them, he cannot interpose such violation to defeat a recovery." (*Boyle v. U. P. R. R. Co.,* 25 Utah 420.) "Where a certain rule of the employer, though established for the safety of the employee, has been habitually disobeyed

since its inception, or for a long period of time, in the presence or to the knowledge of the employer, without an attempt to enforce it, or has been disregarded in such manner and for such length of time as to raise a presumption that it was done with his knowledge and approval, the rule will be regarded abrogated or waived." (*Wright v. S. P. Co.,* 14 Utah 383; *Pool v. S. P. Co.,* 20 Utah 210.)

This legal duty of the master to furnish his servants a reasonably safe place in which to work, together with reasonably safe instrumentalities (such as danger flags) with which to perform their labor, is a personal duty of the master and is a legal duty obligatory upon him and which he can not delegate to a servant so as to exempt himself from liability for injuries caused to another servant by its omission. Indeed no duty required of him for the safety and protection of his servants can be transferred, so as to exonerate him from such liability. The servant does not undertake to incur the risks arising from the want of sufficient and skilful co-laborers, or from defective machinery or other instruments with which he is to work. His contract implies that in regard to these matters his employer will make adequate provision that no danger shall ensue to him. This doctrine has been so frequently asserted by courts of the highest character, that it can hardly be considered as any longer open to serious question. (*Wood v. Ry. Co.* [Utah], 79 Pac. 182; *Northern Pacific R. R. Co. v. Herbert,* 116 U. S. 642; *Gardner v. Mich. Cent. R. R. Co.,* 150 U. S. 349; *Union Pacific R. R. Co. v. O'Brien,* 161 U. S. 451; *Hough v. Railway Co.,* 100 U. S. 217; *Mather v. Rillston,* 156 U. S. 391; *Chapman v. S. P. Co.,* 12 Utah 30; *Pool v. S. P. Co.,* 20 Utah 210; *Fuller v. Jewett,* 80 N. Y. 46; *Pullman Car Co. v. Laack,* 143 Ill. 242; *Morton v. R. R. Co.,* 81 Mich. 423; *Railroad Co. v. Trainor,* 137 Pa. St. 148; *Big Creek Stone Co. v. Wolf,* 138 Ind. 496; *Engstrom v. Ashland Iron Co.,* 87 Wis. 166; *Kelly v. Ryus,* 48 Kan. 120; 1 La Batt, Master and Servant, pars. 574 and 576, and the many cases cited.)

Deceased did not assume the risk arising from appellant's negligence in failing in its duty to furnish blue signal flags,

and in failing to enforce its rule requiring their use, even if furnished. (*Faulkner v. Mining Co.*, 23 Utah 437; *Pool v. S. P. Co.*, 20 Utah 210; *Boyle v. U. P. R. R. Co.*, 25 Utah 420; *Miller v. Mining Co.*, 18 Utah 358; *Texas & Pacific R. R. Co. v. Archibald*, 170 U. S. 665; 1 Shearman & Redfield on Negligence [5 Ed.], par. 185a.)

STRAUP, J.

1. Respondents had judgment against appellants for negligently causing the death of William A. Merrill, the husband and father of respondents. Among other things, it was alleged in the complaint that the deceased was in the employ of the appellant as a car repairer at its yard in Pocatello, Idaho, and was directed to make repairs on one of its cars in a string or train of cars standing upon one of its tracks in said yard; that the appellant had negligently failed to promulgate and enforce rules and regulations concerning the displaying of flags when car repairers were between or under cars making repairs, and at such time forbidding coupling onto or moving the said cars; that whilst the deceased was between two of said cars the appellant, without notice or warning to the deceased, negligently backed and kicked a string of cars against the cars on which the deceased was making repairs, thereby moving them and so injuring him that he died. The answer contained a general denial as to all of the alleged acts of negligence, and alleged negligence of a fellow servant, contributory negligence of the deceased, and that his death was caused from a usual and ordinary risk of his employment.

2. The evidence on behalf of respondents, so far as material to the assigned errors, tends to show: That there were ten tracks running parallel with each other in the yard, which was about three-quarters of a mile long. The yard was used for holding, breaking, and the making up of trains, and a great deal of switching was done there. All trains, both passenger and freight, were stopped and looked over, and, if any light repairs were necessary, they were made there. The deceased was a member of a crew of car repairers, over which there was a foreman. There was a switch crew switching in

the yard, over which there was also a foreman. There was also a yard master and a general foreman of the car shops. The deceased was between two cars of a string of four or five cars standing on track No. 6, repairing a coupler. He was working alone. There was no system of signaling or warning used by appellant to make known that car repairers were under of between cars while making repairs, standing upon the track in the yard. There were no flags or other signals displayed on the cars where the deceased was at work. Appellant had not furnished flags for such purpose. Light repairs would be made while the switchmen were rearranging the cars, and between the times the cars would be switched and moved about. The men were not in the habit of using flags to protect themselves when making repairs. When there were two men working together, one would look out while the other made the repairs. When a repairer was alone, he looked out for himself and took his own chances. About a year prior to the accident, appellant and the men were in the habit of using flags, and when a train came into the yard the inspectors and repairers were in the habit of putting a flag at each end, and then the inspection would be made. About a year prior to the accident, complaint was made by the yard master to the foreman of the inspection and repair crew that such method held the cars too long, and prevented needed switching and making up of trains in the yard, and the yard master stated to the foreman that the flags would have to be taken off as quick as the inspection was done, and that the work would have to be done afterwards. After that the repairers would work between the cars without a flag. The deceased was in the employ of appellant, engaged at this work in its yard, a little over a month. Whilst he was at work between two of said cars a string of about twenty-four cars in the process of switching were kicked and run down upon the track, and against the cars where the deceased was at work, thereby injuring him so that he died. The cars would not have been kicked down and run against the other cars, had a flag or some other danger signal been displayed about or upon them. The above, of course, is a statement of that portion of the evi-

29 Utah—18

dence most favorable to the respondents. Appellant introduced evidence showing that it had not only established and promulgated rules and regulations concerning the displaying of flags under said circumstances, but that it had also enforced such rules; that at the time of the accident, and for a long time prior thereto, it had promulgated and enforced a rule (No. 26):

> "A blue flag by day and a blue light by night displayed at one or both ends of an engine, car or train indicates that workmen are under or about it. When thus protected it must not be coupled to or moved. Workmen will display the blue signals and the same workmen are alone authorized to remove them. Other cars must not be placed on the same track so as to intercept the view of the blue signals without first notifying the workmen."

Another rule:

> "When inspecting and repairing cars which they do not wish moved, they must protect themselves by placing conspicuously a blue signal on both ends of the car, as provided in rule 26, and when necessary to make repairs on a car in a train, they must place blue signals on both ends of the train before commencing work. If an engine is attached to it, they will place a blue signal upon the engine where it can be plainly seen by the engineman and fireman."

It introduced evidence showing it had furnished and had on hand an ample supply of flags for such purpose, and that there was no disregard of the use of them, but that they were generally used and displayed by the repair men when inspecting and making repairs, in accordance with, and as it was their duty to do under the said rules.

3. The court charged the jury that respondent's rights to recover in the action were to be determined by the law of the state of Idaho, and charged, under such law, that the foreman of the repair or inspecting crew, the foreman of the switch-

ing crew, and all other persons at work in and about the yard were fellow servants with the deceased, and that appellant was not liable for any negligence of either said foremen or said persons. But the court further charged that if the appellant was negligent, as alleged in the complaint in respect to promulgating, and enforcing rules and regulations, and the deceased did not know of such negligence, and if the negligence of appellant combined and concurred with the negligence of a fellow servant, and if such negligence of the appellant was a proximate cause of the injury and death of deceased, it would be liable. The court fully charged the jury as to their determination when and under what circumstances rules were required, and as to the duties of appellant in promulgating and enforcing them, and, if ordinary care in these respects had been used, its duty was discharged, "even though it has failed in its efforts to secure obedience or observation of the rules. If, after performing this duty, the rules are violated or not enforced by the fellow servants," and injury is occasioned as a result thereof, appellant was not liable. The court also fully charged as to contributory negligence, and, among other things, that it was the duty of the deceased to use "ordinary care to acquaint himself with the rules and regulations of his employer, to familiarize himself with the methods employed by the employer in the performance and conduct of his business, and to guard and protect himself against injury that might arise from the way the business was being conducted and managed. The servant must exercise the same degree of care for his own safety and protection as the master is required to observe towards his empolyees, in providing for their safety and guarding against their injury," and, if the deceased did not do these things, respondents could not recover. The court also charged that the deceased assumed the usual and ordinary risks incident to his employment, the usual and ordinary risks arising from the manner in which the business in which the deceased took part was managed and conducted, the risks or hazards known to him, or which were open and obvious, or which, in the exercise of ordinary care, would have been known to him, and

that appellant was not liable for an injury resulting from any such risks.

4. The principal assigned error, and the only one discussed in the brief, relates to the refusal of the court to give appellant's request to direct a verdict for it. This is claimed upon the grounds that there was no negligence shown upon the part of appellant, for that it had promulgated rules and regulations calculated to secure the safety of its employees, had flags on hand, and, if the rules and regulations were not carried out, such failure, if it amounted to negligence, was that of a fellow servant. That is to say, the master has performed his full duty, by framing and promulgating rules, and "exercising care to enforce the rules by the selection of reasonably competent persons to perform the work," and that appellant is not liable for a failure to carry out the methods as prescribed. It is also claimed that the deceased was guilty of negligence in not displaying a flag, and that the danger was a usual and ordinary risk incident to the employment, and was therefore assumed by him. Appellant, with great care and at some length, discussed the question, and cited numerous authorities to the effect that under the law and the decisions of the State of Idaho the foreman of the car repairers, and switch crew, and all persons in the yard, regardless as to whether they were foreman or yard master, were fellow servants with the deceased. To this contention it is quite sufficient to say that the trial court so held with appellant, and so charged the jury. The important question, therefore, is whether the negligence, if any there was, causing the injury and death of the deceased, arose and grew out of a failure to perform some primary or positive duty which appellant, as master, owed the deceased, or whether it arose out of some mere negligent act of a person or persons about the yard, held to be fellow servants, including the said foremen and yard master, or whether there was any negligence upon the part of the appellant with respect to its primary or positive duties, combining and concurring with the negligence of a fellow servant as a proximate cause of the injury and death.

It must be conceded it is settled law that among the primary

and positive duties of the master, owing his servant, is the one of using ordinary care to promulgate and enforce reasonable rules and regulations for the safety of his servants, when the nature of the business or the work requires it, and that this duty is nondelegable. And it also is well-settled law that, where the negligence of the master and that of a fellow servant together produce injury, the master is liable therefor on the ground of concurring negligence; that the mere fact of a concurrence of one who stands in the relation of a fellow servant to the one receiving the injury does not exonerate the master from his original fault. The primary duty here resting upon appellant was not only to use ordinary care to promulgate rules, but also to use ordinary care to enforce them. The doctrine which appellant here invokes—that the master's duty was performed when he promulgated rules, and used ordinary care in selecting men to enforce them—cannot obtain. For the care with respect to enforcing the rules is just as much a primary and nondelegable duty as is the one of promulgating rules or of furnishing a safe place or appliance.

> "An employer does not discharge his whole duty by merely framing and promulgating proper rules for the conduct of his business and the guidance and control of his servants. He is also under the obligation of enforcing the rules in so far as that result can be attained by exercising a reasonably careful supervision over his business and his servants. In other words, a master's duty does not end with prescribing rules calculated to secure the safety of his employees. It is equally binding on him honestly and faithfully to require their observance." (Labatt, Mast. & Serv., sec. 214.)

Independent of some statute defining "fellow servant" (there is none in Idaho), the test established by the Supreme Court of the United States and those courts not following the superior servant doctrine, of which Idaho is one, as to when negligence is that of the master or of a fellow servant, is

whether the negligent act is a breach of positive duty owing by the master to his servant. If it is, then negligence in the act is the negligence of the master. In such case the liability of the master is not made to depend in any manner upon the grade of service of a co-employee, but upon the character of the act itself. If, instead of personally performing his obligations with respect to his primary and positive duties, the master engages another to do them for him, he is liable for the neglect of that other, which in such case is not the neglect of a fellow servant, no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such. (*Cen. R. Co. v. Keegan,* 160 U. S. 264, 16 Sup. Ct. 269, 40 L. Ed. 418; *North Pac. R. Co. v. Peterson,* 162 U. S. 353, 16 Sup. Ct. 843, 40 L. Ed. 994; *B. & O. R. R. v. Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; *New Eng. R. Co. v. Conroy,* 175 U. S. 344, 20 Sup. Ct. 85, 44 L. Ed. 181; *Hough v. Ry. Co.,* 100 U. S. 213, 25 L. Ed. 612; *N. P. R. R. v. Herbert,* 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755; *Pool v. R. R.,* 20 Utah 210, 58 Pac. 326.) We think this doctrine, in substance and effect, is recognized by the Supreme Court of Idaho, the State where the acts complained of occurred. (*Harvey v. Min. Co.,* 3 Idaho 510, 31 Pac. 819.)

It is quite true, when the evidence of appellant is considered, it shows that appellant established and promulgated sufficient and proper rules and regulations, used ordinary care to, and did, enforce them, furnished and kept on hand sufficient and necessary flags for such purpose, and that by yielding obedience to such rules the safety of the deceased was reasonably and properly protected and guarded, and that his injury and death were the result either from his failure and neglect to display flags whilst between the cars, or from some omission or commission of the men about the yard in not properly obeying or observing the rules. But in considering whether the court should have directed a verdict for appellant, we must look to that evidence in the record which is most favorable to the respondents; and, when the truth of such testimony is assumed, quite a different state of facts is

made to appear. We think the evidence on behalf of respondents was quite sufficient to submit to the jury the question as to whether appellant used ordinary care, not so much, probably, in establishing and promulgating rules and regulations, but particularly in using ordinary care to enforce them, and in furnishing and providing flags. There was some evidence which tended to show that flags had not been furnished and provided by the appellant, and that there was no system of signaling or warning used by appellant to make known when car repairers were under or between cars, making repairs, and that repairs were made between the times when the cars would be switched and moved about, and that it was the practice and custom not to use flags, and such practice continued for a year prior to the accident, and, though rules and regulations had been established and promulgated, they were abandoned, or so generally and habitually disregarded, from which it could be presumed compliance therewith was not exacted, but waived. The truth and the weight of this testimony were for the jury, which, if believed by them, was sufficient to find that ordinary care had not been used by the appellant in either establishing or in enforcing rules and regulations for the safety of its servants. And as this duty was a primary one, and one which could in no way be delegated so as to relieve appellant from responsibility, therefore any negligence in the failure to perform or in the manner of performing it was appellant's negligence, for which it is liable.

The contention made that it was not shown appellant, through any officer or agent standing in the place of the master, had notice or knowledge that the rule was disregarded, and that notice to or knowledge of the foreman or yard master was not its knowledge, cannot prevail, and is fully answered by the following cases and those already cited: *North P. R. Co. v. Babcock,* 154 U. S. 200, 14 Sup. Ct. 978, 38 L. Ed. 958; *Hough v. Ry. Co.,* 100 U. S. 213, 23 L. Ed. 612.

The knowledge of appellant is not charged by virtue of these men being foremen, but from the fact, as shown by the evidence, to them or some of them was delegated the duty to discharge a primary duty of appellant—of enforcing the

rules. And when a master, instead of performing his primary or positive duty himself, delegates it to another, then, no matter what the rank of such other is, whether high or low, notice to him and his knowledge with respect to such matters is notice to and knowledge of the master. Besides, if true, as testified to by a witness, that for a year it was common practice to disregard the rule, knowledge on the part of the appellant may be inferred therefrom.

It is further urged that the deceased was guilty of negligence, because of his failure to display a flag before going between the cars to make the repairs. It is true, if appellant had established the said rule with respect to displaying a flag, and that the deceased knew there was such a rule, and that such rule was not generally or habitually disregarded, and not abandoned, but reasonably enforced, and that appellant furnished flags for such purpose, and that the deceased failed to display the flag as required by the rule, and that such failure contributed to his injury, clearly respondents were not entitled to recover. But there is evidence in the record to show that appellant had not furnished or provided flags for such purpose during the time that deceased was employed at and about the yard, and for a year prior thereto, and that car repairers during said time were not in the habit of using flags when making repairs in the yard. And appellant cannot well say—much less can we, as matter of law, say—the deceased was guilty of negligence in not using and displaying a flag, when it was not provided or furnished him. And because there was evidence in the record showing though rules and regulations had been established and promulgated, yet for a year prior to the accident they were generally disregarded, under circumstances from which it could be presumed appellant knowingly permitted such disregard, or approved it, without attempting to enforce the rules, we think it was a question for the jury to determine whether the deceased was or was not guilty of negligence in not displaying a flag or not observing the rules. (*Pool v. R. Co.,* 20 Utah 210, 58 Pac. 326; *Boyle v. R. R.,* 25 Utah 420, 71 Pac. 988; *Wright v. R. R.,* 14 Utah 383, 46 Pac. 374.

It is further claimed that deceased assumed the risk. It is true, the servant assumes the usual and ordinary risks incident to his employment. But with the exception hereinafter stated, he does not assume the danger and perils occasioned through the negligence of his employer.

> "It is true that, when the plaintiff entered the employment of the defendant as switchman in the yards at Carlin, he assumed the perils and risks ordinarily incident to such employment, including the hazards which observation would bring to his knowledge; but he did not assume the perils occasioned through the negligence of his employer." (*Wright v. R. R.,* 14 Utah 392, 46 Pac. 374; *Pool v. R. R.,* 20 Utah 216, 58 Pac. 326.)

In entering his employment the servant has the right to assume that the master has used ordinary care with respect to the performance of his primary and positive duties, and the servant does not assume the perils and risks occasioned by the negligence of the master in his failure to perform these duties, unless the servant has actual or presumptive knowledge that these duties have not been performed, and the perils and risks arising therefrom, and to which he is exposed, are known to him, or are so obvious that knowledge may be presumed, and, with such knowledge, he accepted or continued in his employment without complaint or protest.

> "The servant has the right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume the risk of the employer's negligence in performing such duties. The employee is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for its operation. This rule is subject to the exception that where a defect is known to the employee, or is so patent as to be readily observed by him, he cannot continue to use

the defective apparatus in the face of knowledge and without objection, without assuming the hazard incident to such a situation. In other words, if he knows of a defect, or it is so plainly observable that he may be presumed to know of it, and continues in the master's employ without objection, he is taken to have made his election to continue in the employ of the master, notwithstanding the defect, and in such case cannot recover." (*R. Co. v. McDade,* 191 U. S. 68, 24 Sup. Ct. 24, 48 L. Ed. 96.)

After stating the general rule again, it was said:

"But no reason can be found for, and no authority exists supporting, the contention that an employee, either from his knowledge of the employer's methods of business, or from a failure to use ordinary care to ascertain such methods, subjects himself to the risks of appliances being furnished which contain defects that might have been discovered by reasonable inspection. The employer, on the one hand, may rely on the fact that his employee assumes the risks usually incident to the employment. The employee, on the other hand, has the right to rest on the assumption that appliances furnished are free from defects discoverable by proper inspection, and is not submitted to the danger of using appliances containing such defects because of his knowledge of the general methods adopted by the employer in carrying on his business, or because by ordinary care he might have known of the methods, and inferred therefrom that danger of unsafe appliances might arise. The employee is not compelled to pass judgment on the employer's methods of business, or to conclude as to their adequacy. . . . In assuming the risks of the particular service in which he engages, the employee may legally assume that the employer, by whatever rule he elects to conduct his business, will

fulfill his legal duty by making reasonable efforts to furnish appliances reasonably safe for the purposes for which they are intended; and, whilst this does not justify an employee in using an appliance which he knows to be defective, or relieve him from observing patent defects therein, it obviously does not compel him to know or investigate the employer's modes of business, under the penalty, if he does not do so, of taking the risk of the employer's fault in furnishing him unsafe appliances." (*Ry. v. Archibald,* 170 U. S. 671, 18 Sup. Ct. 777, 42 L. Ed. 1188.)

Tested by these principles, we cannot say, as matter of law, that the deceased assumed the risk of the peril and danger to which he was exposed and which caused his injury, but we think it was a question of fact to be submitted to the jury; and the law with respect thereto, we think, was stated more favorably to the appellant than it had a right to ask. Here was evidence to show that the peril to which the deceased was exposed was occasioned through the want of ordinary care by appellant, either in not promulgating a proper rule, or by not using ordinary care in enforcing it, which, of course, was its negligence.

The point now is, did the deceased have knowledge, either actual or presumptive, that the nature of the business was such as to require rules and regulations; whether rules had been promulgated; if promulgated, what was his knowledge with respect to the disregard or waiver or abandonment of the rules; what was his knowledge with respect to the perils occasioned thereby; his knowledge as to the condition of the premises, the things then being done or about to be done, the nature and character of the work then being performed about the yard, all to be considered in connection with what he was doing himself, and from all of which his peril arose; and how manifest and obvious this peril was made to appear or his perilous situation disclosed. His knowledge of these matters does not rest upon any direct evidence in the case, but it is to be gathered and deduced from the length of time he was

employed about the yard, the nature and character of his work, his conduct with respect thereto, his experience and familiarity therewith, the condition and situation of the premises, the nature and character of the work and the things there done; and from all the facts and circumstances bearing upon the question, and tending to show knowledge of his peril, or the lack of it. It is apparent what knowledge the deceased had, either actual or presumptive, with respect to these matters, was a question of fact. Furthermore, it is the law that a servant has the right to assume that the master has used ordinary care in the discharge of his duties, and that "the employee is not obliged to pass judgment upon the employer's method of transacting his business," and he may rest upon the presumption that the master has done his duty, until, of course, he has knowledge, either actual or presumptive, that such duty has not been performed, and he knows the danger, and the peril to which he is exposed from the want or manner of discharging it, or that the peril therefrom is so obvious that knowledge may be presumed. If appellant here was negligent with respect to its duties, we cannot say, as matter of law, that the deceased was called upon to pass judgment upon the manner and method in which appellant was conducting its business, as is shown by the evidence on behalf of respondents, and that he had knowledge that such method was improper or inadequate, and that he knew the perils arising therefrom, and to which he was exposed, and that he, with such knowledge, accepted or continued in his employment. We think it was a question of fact for the jury. What was said upon this question in the *Pool Case* equally well applies here. Our conclusion, therefore, is, whether the nature and character of the work and business were such as to require appellant, in the exercise of ordinary care, to promulgate and enforce rules and regulations, and as to whether its duty in these respects was performed with ordinary care; whether the injury and death were the result of such want of care, or of a negligent act of a fellow servant, or of a concurrence and combination of both; whether the deceased was himself guilty of negligence, or whether he assumed the risk—were, under

the circumstances of the case, all questions of fact to be sub-
mitted to the jury. Upon all these matters the charge of the
court was quite full, and on some of them stating the law more
strongly for appellant than many of the authorities seem to
indicate.

The judgment of the court below is therefore affirmed, with
costs.

BARTCH, C. J., and McCARTY, J., concur.