[No. 7544.  *En Banc.*  July 8, 1909.]

## HENRY SIPES, *Respondent*, v. PUGET SOUND ELECTRIC RAILWAY, *Appellant*, and W. S. DIMMOCK, *Defendant*.[1]

APPEAL—REVIEW—HARMLESS ERROR.  Evidence as to defendant's grades, cuts, and curves, not pleaded as negligence, is not prejudicial where it was introduced as descriptive of the place and to disprove contributory negligence, and the jury was instructed at the time that negligence of the defendant could not be predicated thereon.

MASTER AND SERVANT—NEGLIGENCE—RAILROADS—FLAGGING SYSTEM —EVIDENCE OF CUSTOM.  Evidence of the system of flagging trains in use on other roads of like character is competent upon an issue as to defendant's negligence in employing an unsafe system which resulted in a collision.

SAME.  Upon an issue as to the safety of a train dispatching system, evidence tending to show what would have been a safe and proper order for the running of a train is admissible for the purpose of comparison.

APPEAL—DECISION—LAW OF CASE.  An instruction not excepted to, that a brakeman on an interurban electric railway, sent ahead by a conductor to flag another train, is a fellow servant of the conductor, becomes the law of the case.

MASTER AND SERVANT—NEGLIGENCE—RAILROADS—PROMULGATION OF TRAIN RULES.  The sufficiency and reasonableness of rules and regulations promulgated for the running of trains is a mixed question of law and fact where there were other and safer methods.

SAME—COLLISION OF TRAINS — CONCURRENT NEGLIGENCE — PROXIMATE CAUSE.  Where a collision was caused by the negligence of a flagman, sent ahead under verbal orders to flag trains at a certain station, where there were two other methods of flagging that would appear to be safer, and the company had tacitly admitted that the prevailing method was unsafe; the negligence of the company in failing to promulgate proper rules concurs with the negligence of the flagman as the proximate cause of the accident; as the facts constitute a continuous succession of events that should have been anticipated.

SAME—CONTRIBUTORY NEGLIGENCE—FAILURE TO OBSERVE RULES.  Contributory negligence of a motorman cannot be predicated on his failure to give his brakeman a written order to flag a train, as re-

[1]Reported in 102 Pac. 1057.

quired by the rules of the company, where the rule was habitually disregarded and had not been properly promulgated or posted or brought to plaintiff's notice.

MASTER AND SERVANT—JOINT LIABILITY — VERDICT EXONERATING NEGLIGENT SERVANT—JUDGMENT. A verdict in favor of the servant exonerates the master, in an action against an electric railway and its general manager for injuries received by a motorman in a collision, where the only evidence of negligence was that charged against the general manager in failing to promulgate proper train dispatching rules.

MASTER AND SERVANT—NEGLIGENCE—RAILROADS—TRAIN DISPATCHING SYSTEM—TELEGRAPH STATIONS. In an action for injuries received in a collision resulting from failure to promulgate proper train dispatching rules, negligence cannot be predicated on failure to establish telegraph or telephone stations at a point, when the orders were correctly received by telephone at that point; nor upon the fact that the accident would have been avoided by maintaining a telegraph station at some particular point on the road, when stations were maintained from five to eight miles apart.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 11, 1908, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a conductor of a railway train through a collision. Reversed.

*James B. Howe, Hugh A. Tait,* and *A. J. Falknor,* for appellant.

*John E. Ryan,* for respondent.

RUDKIN, C. J.—The Puget Sound Electric Railway operates a third-rail electric railroad between the cities of Tacoma and Seattle, a distance of thirty-six miles, over which in the neighborhood of one hundred trains of all classes are run daily. Regular passenger trains make the distance between the two cities in one hour and twenty-five minutes. The defendant Dimmock is manager of the road, and, among other things, is charged with the duty of promulgating rules and regulations to insure the safe operation of trains. The respondent, Sipes, was at the times hereinafter mentioned a conductor on one of the company's freight trains.

On the morning of December 26, 1907, passenger train
No. 3 was scheduled to leave Seattle at 6:30 a. m., arriving at
Tacoma at 7:55 a. m. Passenger train No. 6 was scheduled
to leave Tacoma at 7:10 a. m., arriving at Seattle at 8:30
a. m. The regular meeting or passing point for these trains
was Milton, a station six and one-half miles north of Tacoma,
but on the morning in question train No. 3 from Seattle was
about ten minutes late and the meeting or passing place was
changed to Edgewood, a point one and three-fourths miles
north of Milton. About 7:00 o'clock on the morning in ques-
tion, the train dispatcher ordered the plaintiff, Sipes, to take
motor No. 626 from the Puyallup yards, two miles from Ta-
coma, and proceed to a gravel pit one and one-half miles
north of Edgewood, flagging to Edgewood on train No. 6.
The meaning of this order was that the plaintiff should send
a flagman on No. 6, furnished with a red flag and torpedoes,
with instructions to hold all trains so that motor No. 626
would have the right of way to Edgewood, following train
No. 6. This order was received over the telephone and was
communicated verbally by the plaintiff to his brakeman
named Foss. The brakeman took his flag and torpedoes and
boarded No. 6 at Puyallup yards. Train No. 6 then pro-
ceeded on its way to Seattle, followed by motor No. 626 in
charge of the plaintiff as conductor. The flagman per-
formed his duty satisfactorily until No. 6 reached Edgewood,
but there, for some inexplicable reason, he failed to com-
municate his orders to the motorman and conductor of south
bound train No. 3. As a result of this omission of duty on
his part, train No. 3 passed No. 6 at Edgewood, without
awaiting the arrival of motor No. 626, and the two trains
(No. 3 and the motor in charge of the plaintiff) collided
shortly after No. 3 left Edgewood, causing serious injury
to the plaintiff, for which a recovery was sought in this
action. From a judgment in favor of the plaintiff and

4—54 WASH.

against the Puget Sound Electric Railway, this appeal is prosecuted.

The admission of testimony tending to show the grades, cuts, and curves along the line of the appellant's road is first assigned as error. This testimony was largely descriptive of the place of the accident, and the question seems to have been gone into in a limited way by the respondent on the erroneous assumption that the burden was on him to disprove contributory negligence—in other words, to prove that he was not at fault in failing to see the approaching train with which his own motor collided. The court explicitly instructed the jury at the time that negligence against the appellant could not be predicated on its grades, cuts, or curves, and the testimony was not prejudicial.

The ruling of the court admitting testimony tending to show the flagging system in use on other roads of like character is next assigned as error. The standard of due care is the conduct of the average prudent man. It would doubtless have been competent for the appellant to show that its flagging system was the one in general use on other roads of like character throughout the country, and it would seem equally competent for the respondent to prove that a like flagging system was not in use elsewhere. Such testimony would not be at all conclusive against the appellant, but it was proper for the consideration of the jury.

"In order to aid the jury in determining whether the defendant had exercised reasonable care in providing and maintaining the machinery actually in use, it was competent to show what other kind of machinery or appliances were used elsewhere, and might have been used at the shaft." *Myers v. Hudson Iron Co.*, 150 Mass. 125.

See, also, *Belleville Stone Co. v. Comben*, 61 N. J. L. 353, 39 Atl. 641.

The admission of testimony tending to show what would have been a safe and proper order under which to run the respondent's motor from the Puyallup yards to Edgewood is

also assigned as error. Jurors as a rule are not familiar with the systems ordinarily employed in dispatching and running trains, and it would be impossible for them to determine whether the system employed by the appellant in this case was safe or dangerous, proper or improper, unless they were permitted to compare it with some other better, safer, and equally practical system which would accomplish the same result. The appellant was not required to adopt any particular system. It satisfies the requirements of the law when it adopts and enforces a system that is reasonably safe. The safety of the system adopted, however, was the question at issue in this case, and in determining that issue the jury were entitled to know what other practical system or systems might have been adopted to accomplish the same result. See cases above cited.

The next three assignments go to the sufficiency of the evidence to sustain the verdict and judgment. In the consideration of these assignments we only deem it necessary to allude to two of the grounds of negligence charged in the complaint: namely, negligence of the flagman Foss and the failure of the appellant to promulgate and enforce reasonable rules and regulations to insure the safety of its employees. The court below charged the jury that the respondent and the flagman Foss were fellow servants, and that no right of action would accrue to the former for injuries suffered through the negligence of the latter. We accept this charge as the law of the case, and it only remains to consider whether any negligence on the part of the appellant concurred with the negligence of the flagman in producing the injury complained of. The appellant contends, that if the verbal order given to the flagman had been properly executed it would have proved an absolute safeguard against the collision; that whether the rules and regulations were reasonable and sufficient presents a question of law for the decision of the court; that the negligence of the flagman was the proximate cause of the injury, and that the respondent was

guilty of contributory negligence in failing to give a written order to the flagman as required by certain bulletins promulgated by the appellant. The bulletins referred to are as follows:

"Bulletin No. 766. Tacoma, October 24, 1905. Puget Sound Electric Railway. Train Master's Office. All concerned:—Hereafter when it becomes necessary for conductors to send brakemen on passenger train, or other trains, to a station ahead to flag, instructions must be given to the brakeman in writing, what he is to flag, the name of station plainly written where he is to stop, for example: Riverton, October 23rd, 1905. A. B. Smith, Brakeman. Go to Davis on No. 46 and hold all south bound trains except first class trains until extra No. 626 north arrives. C. L. Jones, Conductor Extra No. 626 No."

"Bulletin No. 832, Tacoma, June 7th, 1906. Puget Sound Electric Railway, Train Master's Office. All Conductors and Motormen:—Your attention is called to Bulletin No. 766, October 24th, 1905. I notice it is not being observed in all cases. It must, however, be done at all times. In addition to that the motorman who carries the flagman must be shown the authority held by the flagman as he must as a necessity act as protector of the train so flagged until he has safely landed the flagman at his destination."

We will consider these several contentions in their order. No doubt the verbal order if properly executed would have proved sufficient, but that is not conclusive upon the question of the adequacy of the system adopted. This question will be further considered in connection with the contention that the sufficiency and reasonableness of the rules and regulations presents a question of law for the decision of the court. This latter contention is supported by authority, but not, in our opinion, by the weight of authority or the better reasoning. No doubt rules and regulations may be so full and complete that a court may declare them reasonable and sufficient as a matter of law, or they may be so faulty and defective that a court will not hesitate to declare them unreasonable and deficient as a matter of law, but between these extremes there is

of necessity a debatable ground, where the question of the reasonableness and sufficiency of rules and regulations is a mixed question of law and fact to be determined by the jury under proper instructions from the court. *Warn v. New York Cent. etc. R. Co.,* 29 N. Y. Supp. 897; *Sheehan v. New York Cent. etc. R. Co.,* 91 N. Y. 332; *Abel v. Delaware & H. C. Co.,* 103 N. Y. 581, 9 N. E. 325, 57 Am. Rep. 773; *Chicago B. & Q. R. Co. v. McLallen,* 84 Ill. 109; *Illinois Cent. R. Co. v. Neer,* 31 Ill. App. 126; *Bass v. Chicago & N. W. R. Co.,* 36 Wis. 450, 17 Am. Rep. 495; 34 Cent. Dig., Title, Master and Servant, § 1038.

We think this case falls within the latter class. Here at least three different methods of dispatching trains were disclosed by the testimony; namely, sending the flagman ahead with verbal orders to hold other trains, as was done in this case; running the motor as a second section of train No. 6, in which case No. 6 would carry green signals and all other trains would leave the track clear until the second section or motor had passed; and the rule prescribed by the two bulletins above referred to. As between these several methods the latter two would seem much the safer. A number of experienced railroad men testified that a verbal order is unsafe and that such a system is not in use elsewhere. Aside from this, the terms of such an order rest in the memory of a single person, and its proper execution rests solely in his fidelity. If the motor were run as a second section of No. 6, all other trainmen would see the signals and govern themselves accordingly. If the method prescribed by the bulletins were adopted, the flagman would not forget his orders, and the motorman with him would act as a check and stop all other trains until the order was safely delivered. Indeed, the above bulletins, especially the second, tacitly admit that the prevailing practice was improper at least, if not unsafe. Under these circumstances, we think the jury were warranted in finding that the negligence of the appellant concurred with the negligence of the flagman in producing the injury.

What was the proximate cause of the accident? Proximate cause has been thus defined:

"The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market-place. 2 Bl. Rep. 892. The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." Milwaukee etc. R. Co. v. Kellogg, 94 U. S. 469.

The appellant contends that the negligence of the flagman was the proximate cause; but, if verbal orders are unsafe, was not the flagman the mere instrumentality of an inadequate system? If such orders are unsafe it must be because men will misinterpret, misunderstand, and forget, and was not the appellant chargeable with notice of these human infirmities and should it not have foreseen the result? For these reasons the negligence of the master concurred with the negligence of the flagman in producing the injury, and in such cases the master is liable. Ryan v. Delaware & Hudson R. Co., 114 App. Div. 268, 99 N. Y. Supp. 794; Coppins v. New York Cent. etc. R. Co., 122 N. Y. 557, 25 N. E. 915, 19 Am. St. 523; Merrill v. Oregon Short Line R. Co., 29 Utah 264, 81 Pac. 85, 110 Am. St. 695; Gray v. Washington

*Water Power Co.*, 27 Wash. 713, 68 Pac. 360; 21 Am. &
Eng. Ency. Law (2d ed.), p. 487; 34 Cent. Dig. §§ 515-525.

The failure of the respondent to give a written order to
the flagman, as required by the bulletins above referred to,
would constitute such contributory negligence on his part
as would bar a recovery, but the testimony tends to show
that this requirement was habitually disregarded, and the
jury found that the respondent had no knowledge of the bul-
letins and was not chargeable with notice of their contents,
because they had not been properly promulgated or posted.

Lastly, it is contended that the only negligence charged
against the appellant was the negligence of the defendant
Dimmock and the negligence of the flagman Foss; that the
jury found in favor of the defendant Dimmock, and the court
instructed that the appellant was not answerable for the neg-
ligence of the flagman, and that, therefore, judgment should
have been directed for the appellant notwithstanding the ver-
dict, on the authority of *Doremus v. Root*, 23 Wash. 710,
63 Pac. 572, 54 L. R. A. 649, and other cases in this court
following that decision.

This contention must be sustained.   The decision in *Do-
remus v. Root* is based upon the principle that the master
and servant are privies in law, and therefore a judgment in
favor of the servant, in an action to recover damages for a
tort committed by the servant, is a bar to an action against
the master to recover damages for the same tortious act of
the servant.   The principle of that case has been repeatedly
reaffirmed in this court, and the case has often been cited with
approval in other jurisdictions. *Friend v. Ralston*, 35 Wash.
422, 77 Pac. 794; *Stevick v. Northern Pac. R. Co.*, 39 Wash.
501, 81 Pac. 999; *Morris v. Northwestern Imp. Co.*, 53 Wash.
451, 102 Pac. 402; *McGinnis v. Chicago etc. R. Co.*, 200 Mo.
347, 98 S. W. 590, 118 Am. St. 661; *Chicago etc. R. Co. v.
McManegal*, 73 Neb. 580, 103 N. W. 305, 107 N. W. 243;
*Hayes v. Chicago Tel. Co.*, 218 Ill. 414, 75 N. E. 1003, 2 L.

R. A. (N. S.) 764; *McCoy v. Louisville & N. R. Co.*, 146 Ala. 333, 40 South. 106.

The only difference between the *Doremus* case and the case at bar lies in the fact that in the former case the servant was charged with misfeasance, while here the charge is nonfeasance. This court has held, however, that the agent or servant is liable for both nonfeasance and misfeasance in this class of actions. *Lough v. John Davis & Co.*, 30 Wash. 204, 70 Pac. 491, 94 Am. St. 848, 59 L. R. A. 802; *Howe v. Northern Pac. R. Co.*, 30 Wash. 569, 70 Pac. 1100, 60 L. R. A. 949.

Applying the rule announced in these cases to the facts in the case at bar, we find it alleged in the complaint:

"That at the time of the injuries received by the plaintiff as hereinafter more particularly mentioned and described, the defendant, W. S. Dimmock, was the manager of the defendant corporation, and as such manager was vested with the management and control of the corporation of the line of electric railway aforesaid, and had full power and authority to make rules and regulations for the proper and safe operation of the defendant's cars and trains over said line, and it was his duty to issue and put in force all proper and necessary orders, rules and regulations for the safe operation of the defendant corporation's cars and tracks and to direct, and control the movement and operation of its trains and to have orders issued and transmitted for such purposes,"

and other allegations of like import. The admissions in the answer were as broad as the allegations of the complaint, and the servant defended on the ground that he had not failed in the performance of any duty devolved upon him under the allegations of the complaint. By the judgment in favor of the servant it was judicially established that he had fully discharged every duty assigned or imposed upon him, and that judgment inures to the benefit of the master. If the servant fully discharged the duties imposed upon him by the law and by the master, it follows, as a matter of course and as a matter of law, that the master did not and could not fail in

the performance of these same duties.  What charge of neg-
ligence is there in this case then that is not disposed of by
the judgment in favor of the general manager?  The re-
spondent contends that the appellant was negligent in the
following particulars: "(1) The failure of the railroad com-
pany to establish telephone and telegraph stations at Puy-
allup yards and Edgewood; (2) the failure of the company,
by and through its trainmaster Lussier, to warn No. 3 of
the approach of motor No. 626 upon which Mr. Sipes was
working; (3) the failure of the company to promulgate and
enforce proper rules and regulations; (4) for the unlawful
issuance of the particular order under which Mr. Sipes was
working; (5) the negligence of Foss in failing to flag No. 3."

No negligence can be predicated upon the failure of the
appellant to establish telegraph or telephone stations at
Puyallup yards.  The respondent received his orders over the
telephone correctly, and the manner in which the orders were
transmitted in no way contributed to his injury.  As to other
telegraph and telephone stations, the proof shows that the
appellant maintained telegraph stations from five to eight
miles apart along the entire length of its road, in addition
to certain telephone stations, and the bare fact that this par-
ticular accident might have been avoided by maintaining a
station at some particular point on the road does not sustain
a charge of negligence, or tend to show that the absence of
such station was the proximate cause of the injury.  It was
not shown that the trainmaster violated any rule of the com-
pany in failing to notify south bound passenger No. 3 of
the approach of motor No. 626, following north bound pas-
senger No. 6, and if there was any negligence in that regard
it was attributable to the rules of the company and not to
the act of the trainmaster.  The third and fourth charges
of negligence are based exclusively upon the inadequacy of
the company's rules and regulations, and the fifth upon the
negligence of the flagman Foss.

The lower court instructed the jury that Foss was a fellow

servant of the respondent, and that no recovery could be had for his negligence. That instruction was not excepted to and has become the law of the case. A careful examination of the entire record convinces us that the negligence of Foss and the failure to adopt and enforce safe and proper rules for the operation of trains was the direct and approximate cause of the injury complained of. The charge of the court and the judgment in favor of the general manager preclude a recovery against the appellant on either of these grounds. We are satisfied that the jury did not understand the effect of their failure to find a verdict for or against the general manager, and for that reason we regret the necessity which compels us to direct a judgment in favor of the appellant, but the law is imperative and leave us no alternative. If plaintiffs will persist in joining the servant with the master in actions of this kind, they must recover against the servant or suffer the consequences attendant upon their failure so to do.

The judgment is reversed, with directions to dismiss the action.

ALL CONCUR.