RAILROAD COMPANY *v.* BARRY.

Opinion delivered November 25, 1893.

1. *Fellow servants—Train dispatcher and fireman.*
   A train dispatcher of a railroad, who has control of the movements of its trains, is not a fellow servant with those engaged in operating its trains, and the company will be liable for his negligence in ordering the movement of trains whereby a fireman is injured.

2. *Damages—Expenses of sickness—Instruction.*
   Where the only evidence as to the expenses of plaintiff's sickness was that of plaintiff who testified that he paid the doctor everything he had and still owed him, without stating any amount, it is error to instruct the jury that they might consider, as an element of damages, the past and prospective expenses of the sickness, and allow such damages as in their judgment would be a fair and just compensation for the same, not exceeding the amount sued for.

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

Action by Barry against the Little Rock & Memphis Railroad Company for personal injuries. The facts are stated in the opinion.

*U. M. & G. B. Rose* for appellant.

1. The legal principles applicable to this case are of elementary simplicity. (1) The company is required to make rules reasonably adapted to secure the safety of its employees. And (2), in those jurisdictions where the train dispatcher is not considered a fellow servant with train men, it is required that train orders shall be intelligible, and such as, if obeyed, will not result in an accident. As illustrating these points, see, 91 Ala. 112; 24 Am. St. 863; 41 A. & E. R. Cas. 339; 60 Miss. 977.

2. The cause of the accident was the recklessness of the engineer in charge of the special, and he was a fellow servant of the plaintiff, as were also the men in

charge of the freight train.    42 Ark. 417 ; 46 *id.* 555 ; 51 *id.* 469 ;  54 *id.* 318 ;  39 *id.* 17 ;  109 U. S. 479 ;  15 A. & E. R. Cases, 244 and note ;  8 *id.* 110 ; 24 *id.* 448 ; 65 Miss. 264 ;  41 A. & E. R. Cas. 486 ; 149 U. S. 368 ; 88 Cal. 337 ; 48 A. & E. R. Cas. 337 and note ; *id.* 116 ;  41 *id*, 414, 398 ;  39 *id.* 330 ;  McKinney on Fellow Servants, p. 283.

3.    The proof is that the conductor was competent. See 1 S. W. Rep. 500 ; 44 A. & E. R. Cas. 637 ; 3 Cush. 270.

4.    It was error to instruct the jury that the train dispatcher was a fellow servant with the fireman.    39 Ark. 17 ; 42 *id.* 417 ; 45 *id.* 318 ; 46 *id.* 555 ; 54 *id.* 289 ; 78 Ind. 77 ; 8 A. & E. R. Cas. 175 ; *ib.* 171 ;  15 *id.* 298 and note ; 5 *id.* 523 ; 77 Mo. 410 ; 58 N. Y. 217.

5.    It was error to instruct the jury that they might allow for expenses of sickness *when none were proved.* 16 Ark. 651 ; 23 *id.* 289 ; 24 *id.* 251 ; 42 *id.* 58 ; 41 *id.* 382 ; 37 *id.* 594 ; 36 *id.* 242.

*W. L. Terry* and *J. M. Moore* for appellee.

1.    The appellant failed to comply with the requirements of the law in regard to its duty to appellee as master.    54 Ark. 300 ; 44 A. & E. R. Cas. 604 ; 12 *id.* 236 ; 8 *id.* 162.

2.    The negligence of the engineer, who is claimed to be a fellow servant, was not the proximate cause of the accident.    Even if the relation of fellow servant existed, if the corporation owed appellee a duty which it failed to perform, thus concurring with the engineer in negligence, the corporation is liable, notwithstanding the negligence of a fellow servant was the immediate or direct cause of the injury.    54 Ark. 300 ; 5 A. & E. R. Cas. 530 ; 44 *id.* 619.

3.    The train dispatcher and firemen were not fellow servants.    54 Ark. 300 ; 23 A. & E. R. Cas. 444 ; 31

*id.* 332; 24 *id.* 395; 12 *id.* 236; 110 U. S. 390.

4. The conductor was grossly ignorant or neglectful of his duties. 33 A. & E. R. Cas. 312.

5. There is evidence as to the expenses of sickness. See Barry's testimony.

HUGHES, J. The appellee was fireman on a special passenger train of the appellant, which came in collision with a freight train standing on the main track of appellant's road, at Forrest City. The appellee, perceiving that a collision would occur, jumped from his position on the special train, believing, as he testified, that it was necessary for him to do so to save his life. He was, as the evidence tends to show, injured thereby, and upon the verdict of a jury recovered a judgment against the appellant for $10,000, to reverse which the case was brought here on appeal.

The road is a single-track road, and the special and the freight were both coming west when the collision occurred. Between Edmonson and Forrest City there was no telegraph station, but there was one at Edmonson, and one at Hopefield, which places are east of Forrest City, on the appellant's road, and west of Memphis. The testimony shows that the freight train left Edmonson at 9:40 A. M., and that it was then about three hours behind its schedule time, and that it did not reach Forrest City until 1:35 or 1:50 P. M., the same day. It was due at 7:45 A. M. but was over five hours and thirty minutes late, having been delayed between Edmonson and Forrest City by the breaking in two of the train. The special train left Memphis at 11:40 A. M.; left Hopefield at about 12:35 P. M., and passed Edmonson at 12:54 the same day. The superintendent of the road told the conductor of the special to keep a sharp lookout for the freight, and the conductor told the engineer of the special that the freight was in the bottom—the country between the Mississippi and St. Francis rivers—and that

he must keep a sharp lookout for it.    Just east of Forrest City, through Crowley's Ridge, there is a deep cut and a reverse curve on the road in the shape of the letter S.   The freight train was a heavy and long one, and could not side-track at Forrest City, and the rear cars of the freight train extended back into this cut in Crowley's Ridge.    When the special reached this cut, its whistle was sounded, but very soon after it ran into the freight cars.    The freight train had been at the station at Forrest City only about one minute, according to the testimony of the engineer of the freight, when the accident happened.    The officers of the freight train, it appears, had no knowledge, or information that the special was behind it.    The orders for the government of the trains, as to how they should run, where they should stop, etc., were given by a train dispatcher, and are required by the rules of the company to be in writing, and verbal orders are not permitted.    The testimony shows that it is the train dispatcher's duty to give orders to the different trains, that he controls their movements and should keep himself informed as to their whereabouts. The only orders given to the conductor and engineer of the special, as shown by the testimony, were those mentioned in the testimony of J. H. Bard, the telegraph operator at Forrest City, which are the following :

"LITTLE ROCK & MEMPHIS RAILROAD.   Telegraph Train Order No. 5.

"MEMPHIS, Oct. 26, 1890.
"To C. & E. of Eng. 5, Hopefield ;

C. & E. No. 5, Forrest City ;

C. & E. Eng. 4 and No. 6, Brinkley :

"Engine 5 will run from Hopefield to Argenta extra.   When No. 5. is overtaken, pass and run ahead of them.    Meet No. 6 and engine 4 at Brinkley.    Do not pass Brinkley unless engine 3 is there.

"A. J. W.

"Conductor and engineer must each have a copy of this order.

| Time received : 12:23 p. m.   O. K. given at 12:25 p. m. | | | | |
|---|---|---|---|---|
| Conductor | Train | Made | At | Recv'd By |
| Heth | Eng. 5 | Complete | 12:29 p. m. | G. |
| Hedrick | No. 5 | " | 2:44 p. m. | B. |
| Fennessey | Eng. 4 | " | 6:20 p. m. | Fi. |
| Kearns | No. 6 | " | 6:45 p. m. | Fi." |

It is contended by the appellant that under its rules these orders were sufficient, and by the appellee that under the circumstances of this case they were not sufficient.

The court refused to instruct the jury at the instance of the appellant, as follows, to-wit : "You are instructed that the engineer, conductor and brakeman of the freight train and the train dispatcher were fellow servants of the plaintiff ; and if you find that the accident resulted from the negligence of any of them, you will find for the defendant."

The court modified this instruction by striking out the words, "and the train dispatcher," and gave it as modified. To this modification the appellant excepted.

At the instance of the appellee the court gave to the jury the following instructions : "If you find for the plaintiff, in assessing his damages you may consider the character of the injuries received by him ; how far they have disabled him, or may in the future disable him, from pursuing his ordinary occupation ; and also the physical pain and suffering to which he has been, or may be in the future, subjected by reason of such injuries ; the effect of the injury on his health ; the past and prospective expenses of his sickness resulting from his injury ; and allow such damages as in your judgment would be a fair and just compensation for the same, not exceeding the

amount sued for." To the giving of which the appellant excepted.

The only question we consider here is, were these instructions obnoxious to the objections urged against them? Did the court err in modifying the third and in giving the fourth?

There is an irreconcilable conflict of authority upon the vexed question, who are fellow servants? In Massachusetts it is held that all who are engaged in a common employment, working to accomplish a common result, are to be regarded as fellow servants. Many, and perhaps a majority of the States adopt this rule. But it is said that the tendency of recent decisions is to narrow this rule. In *Chicago etc. Railroad* v. *Ross*, 112 U. S. 377, 390, the court said: "There is a clear distinction to be made, in their relation to the common principal, between the servants of a corporation, exercising no supervision over others engaged with them in the same employment, and agents of a corporation, clothed with the control and management of a distinct department, in which their duty is entirely that of superintendence and discretion." In *Sheehan* v. *Railroad*, 91 N. Y. 332, a superintendent and assistant superintendent, acting as train dispatchers, were held to be vice-principals. In *Smith* v. *Wabash etc. R. Co.* 92 Mo. 359, it is held that the train dispatcher, in ordering the movement of trains, is to be regarded as the representative of the railroad company, where he has sole and exclusive control in directing their movements.

In *Darrigan* v. *N. Y. etc. R. Co.* 52 Conn. 285, it is held that it is the duty of the railroad company to devise some suitable and safe method of running special and irregular trains, so as to avoid collision, and when the method employed is to have the trains controlled by a train dispatcher, the latter, as to employees in charge of trains, stands in the place of the company. The

*[margin note: 1. When train dispatcher a vice-principal.]*

court said :  " It is immaterial that these men are hired and paid by a common employer, and that the employment is designed to accomplish one common result.   That argument, if pressed to its logical conclusion, would obliterate all distinctions between those engaged in railroad business, from the president down to the humblest servant, and would practically exempt the company from all duty and all liability to those in its service."    See also *Chicago etc. R. Co.* v. *McLallen*, 84 Ill. 109.   The decisions in Ohio, Kentucky, Illinois and Tennessee are substantially in harmony with the cases cited.

It seems impossible to formulate any general rule for all cases.   Each case must, to some extent, be governed by the peculiar circumstances attending it.   In *Baltimore & Ohio R. Co.* v. *McKenzie*, it was held that under the circumstances of that case, a section boss and night watchman represented the company, the court saying :   " Where injuries are caused by the negligence of a servant who is charged with the performance of duties which, by law, it is incumbent on the master to perform, such servant is regarded as the representative of the master, and, in legal contemplation, his negligence is the negligence of the master."   81 Virginia, 71. Judge Cooley says :   " The master is not responsible to one person in his employ for an injury occasioned by the negligence of another in the same service, unless generally, or in respect of the particular duty then resting upon the negligent employee, the latter so far occupied the position of his principal, as to render the principal so far chargable for his negligence as for personal fault."   Cooley on Torts, 564.

Under the circumstances of this case, the movements of the trains being under the direction and control of the train dispatcher, in directing and controlling their movements he was performing the master's duty, and

was not a fellow servant with the plaintiff, but the representative of the company, for whose negligence, if any, resulting in injury, the company is liable. There was therefore no error in the modification of the third instruction given for the appellant, as modified.

The fourth instruction, as to the measure of damages, given for the appellee, is erroneous in this, that it told the jury they might consider, as an element of the plaintiff's damages, the past and prospective expenses of his sickness resulting from his injury, and allow such damages as in their judgment would be a fair and just compensation for the same, not exceeding the amount sued for. The only evidence in regard to expenses of plaintiff's sickness, caused by the injury is his own, which is as follows : " I have paid the doctor all the money I had, after selling everything I had, and still owe him." How much this was is not shown. How then could the jury estimate it? They could not find the amount from the testimony, and there was therefore no evidence upon which to base this part of the instruction. It was calculated to mislead the jury, and make them think the damages were entirely at their discretion. How far it affected their finding we cannot tell. There were elements of speculative damages in the case contemplated in the framing of the instructions, and the jury were at liberty under it to think they were authorized to speculate as to the amounts of the past expenses of the plaintiff's sickness arising from his injury.

For the error in giving the part of this instruction referred to, the judgment is reversed, and the cause is remanded for a new trial.

2. Measure of damages.